UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA    \*    Case No. 23-CR-433(EK)
                      \*
                      \*    Brooklyn, New York
                      \*    January 22, 2024
    v.                 \*
                      \*
BRADEN JOHN KARONY and      \*
 THOMAS SMITH,          \*
                      \*
           Defendants.   \*
                      \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE ERIC R. KOMITEE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        JOHN O'DONNELL ENRIGHT, ESQ.
                            Asst. United States Attorney
                            United States Attorney's Office
                            271 Cadman Plaza
                            Brooklyn, NY 11201

For the Defendant,        ADAM SCHUMAN, ESQ.
 Braden Karony:           EMMA SPIRO, ESQ.
                            Petrillo Klein & Boxer LLP
                            655 Third Avenue
                            New York, NY 10017

For the Defendant,        KATHRYN WOZENCROFT, ESQ.
 Thomas Smith:            Federal Defenders of New York
                            One Pierrepont Plaza, 16th fl.
                            Brooklyn, NY 11201

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

1          (Proceedings commenced at 11:00 a.m.)

2          THE CLERK:  Criminal cause for status conference,

3     docket no. 23-CR-433, USA vs. Karony, et al.  Counsel, please

4     state your appearances for the record, beginning with the

5     government.

6          MR. ENRIGHT:  Good morning, Your Honor.  John

7     Enright for the United States.

8          MR. SCHUMAN:  Good morning, Your Honor. For Mr.

9     Karony, Adam and Emma Spiro from Petrillo Klein and Boxer.

10          THE COURT:  Good morning.

11          MS. WOZENCROFT:  Good morning.  Kathryn Wozencroft,

12     Federal Defenders, and I'm here with Mr. Smith.

13          THE COURT:  Good morning to all the lawyers and Mr.

14     Karony and Mr. Smith, good morning to you both as well.

15          We are here, as you know, for a status conference

16     in this case, I think the first one at which both defendants

17     are physically present, at least with me.  So, welcome.

18          Let me just pull up my agenda here.

19          (Pause.)

20          THE COURT:  Okay.  So I think my agenda for today

21     is -- I know we have protective order.  A protective order

22     proposed by the government. I want to talk about that a

23     little bit.

24          And then assuming we can get that straightened out

25     such that we have a sense of when it is that the parties will

1    begin exchanging discovery, it may make sense to talk about

2    when we -- when it will make sense to set a briefing schedule

3    on pretrial motions.

4            Let's start with the protective order.  And this is

5    just going to take a minute to sync, but has the -- what is

6    the basis for the protective order?

7            MR. ENRIGHT:  So Your Honor has entered a

8    protective order that the government has entered into with

9    Mr. Karony.

10           THE COURT:  Okay.

11           MR. ENRIGHT:  The government has drafted a

12   proposed protective order to Mr. Smith.  Defense counsel and

13   I have discussed that and last week defense counsel sent over

14   some proposed edits.  We just briefly discussed them prior to

15   Your Honor taking the bench.

16           The government's expectation is to be able to

17   accept some of those edits, to return that draft protective

18   order to defense counsel, and then what I suspect is to

19   present to Your Honor a protective order in near term this

20   week that the parties may not have agreement on all terms.

21   Perhaps we will, but assuming we don't, what we would propose

22   to Your Honor is something substantially similar to what Mr.

23   Karony has signed, or his counsel has signed.

24           THE COURT:  What is the basis for the protective

25   order?

1          MR. ENRIGHT:    The basis of the protective order --

2     there are a couple of categories of information that would

3     require protection.

4          As a general matters, Your Honor, there is PII,

5     personally identifiable information of third parties, as well

6     as the defendants themselves.  And these come up in

7     categories of documents like bank records, digital asset

8     exchange records, some PII, for example, in email search

9     warrant returns, et cetera.

10         The protective order sets out -- or the proposed

11    protective order and the existing protective order, vis-a-vis

12    Mr. Karony, sets out different types of treatment with

13    respect to different categories of information, allowing for

14    the government to designate certain categories of information

15    as either sensitive or attorneys eyes only.

16         We would also expect to be producing -- we will be

17    producing records that would identify investors, victims of

18    Safe Moon.

19         So PII victim information. I think those jump out

20    as the two primary categories of information that would

21    require certain protections, Your Honor.

22         THE COURT:  Is it clear that documents that might

23    identify the victims of financial crimes are appropriately

24    made the subject of protective orders as a matter of law?

25         MR. ENRIGHT:   Your Honor, I can say that certainly

1    my practice and my understanding of (indiscernible) to

2    resolve this practice is to protect by way of a protective

3    order information concerning victims of financial crimes.

4            I cannot represent to Your Honor what the state of

5    Second Circuit case law is, candidly, with respect to that

6    designation.

7            I, of course, would be happy to do that and to

8    inform Your Honor by letter or otherwise.

9            THE COURT:  Yes, I come back from time to time to a

10   published order from Judge Karas in the Southern District

11   dated 2013, *United States vs. Smith*, in which he ultimately

12   enters what he calls a blanket protective order, which I

13   think means it covers everything that the government is

14   turning over in discovery.

15           But along the way to that he says that the

16   interests of third parties, at least in that case, did not

17   provide good cause for the protective order and the only

18   legally adequate basis that he saw was the need to protect

19   the integrity of an ongoing criminal investigation.

20           So two questions on the protective order, and I'm

21   happy to revisit this with Mr. Karony, if necessary, also.

22           The questions are is there a valid legal basis for

23   invoking -- for the protective order in the first place and

24   B, is the order tailored to that legitimate legal need such

25   that if we're saying personal identifying information is the

1    basis for the order but then the order applies to every

2    document being exchanged in discovery, there's a mismatch

3    there.

4           So I'd like to get this right.  This is a recurring

5    issue that I see and if and when the parties -- so if the

6    parties come to an agreement that obviously is relevant,

7    although not dispositive. I think there was an agreement in

8    the *Smith* case as well.

9           But if and when the language of what you're going

10   to propose has settled, send me not only the proposed order,

11   please, but also an articulated basis for it.

12           MR. ENRIGHT:   Of course, Your Honor.

13           I would just add, because you mentioned it in

14   summarizing Judge Karas' opinion, the government's

15   investigation is ongoing.  I failed to mention that. I bring

16   that to the court's attention just so that you know.

17           THE COURT:  Thank you.

18           All right.  SO assume that we lock down the

19   protective order in the next week or so.  What does the

20   government anticipate by way of discovery and next steps?

21           So the government has produced some discovery to

22   date, Your Honor. Since we were last before Your Honor we

23   have been collecting and having processed for a production

24   that we expect to be able to make imminently this week,

25   assuming protective order issues are ironed out.

1        And I can give you a general sense of what that

2   discovery will include in terms of size and categories of

3   discovery and what would be left.

4        As we represented to Your Honor at our last

5   conference, one source of data that the government is

6   producing in discovery is data obtained by search warrant

7   from a social media platform.  In general that social media

8   platform allows for private messaging.  Private messaging

9   that the defendants engaged in has been produced.

10        That social media platform also has --

11        THE COURT:  You've already produced --

12        MR. ENRIGHT:   Already produced, Your Honor.

13        THE COURT:  What remains from that social media

14   platform, and it is sizeable, is essentially a server in

15   which really anyone in the public, largely investors, victims

16   of the Safe Moon schemes, could post on and communicate with

17   each other.  That data --

18        THE COURT:  Is there a reason you don't want to

19   name the social media platform?

20        MR. ENRIGHT:   It's Discord, Your Honor.

21        THE COURT:  Okay.

22        MR. ENRIGHT:   The data that we will be producing

23   from that server totals approximately a little bit less than

24   500 gigabytes or half a terabyte of data.  So that's one

25   block or one tranche.

1           The second tranche is approximately 60 grand jury

2    subpoena returns, a production of records received from the

3    Securities and Exchange Commission that they collected in

4    their parallel investigation.  That second tranche of data

5    sums to approximately two gigabytes of data.

6           So, again, short of 500 gigabytes for the Discord

7    server, approximately two gigabytes of data for the grand

8    jury subpoena returns and SEC documents.

9           THE COURT:  How many pages in a terabyte?

10           MR. ENRIGHT:   I feel like I'd be taking perhaps an

11    educated guess but a guess nonetheless, Your Honor. I would

12    have to say it's at least tens of thousands of pages per

13    terabyte.

14           I will say that with respect to the Discord server,

15    Your Honor, that's in spreadsheet form.  So one, as I

16    understand it, could have literally one Excel spreadsheet

17    with either ten rows of data or hundreds of thousands of rows

18    of data.  We're obviously here talking about the later.

19    Hundreds of thousands of rows of data in that Excel

20    spreadsheet.

21           And then with respect to the grand jury subpoena

22    returns, I don't know -- you know, I would also think that

23    size relative to page count depends on the file type, whether

24    it's a PDF or a JPEG, et cetera. I just don't know, Your

25    Honor.

1      I'm confident to say that we are talking about tens

2  of thousands of pages, at least.

3      THE COURT:  Okay.  I am sensitive, obviously, to

4  the complexity of the discovery materials in this case.  I

5  expect that the exchange of discovery will work as

6  efficiently as possible, but I want the parties to be

7  proactive, to the maximum extent possible, about making that

8  happen.

9      And so try to anticipate questions and qualms from

10  defense counsel. Are there compatibility issues, you know,

11  such that the format in which the discovery is being produced

12  is something the defense will need specialized software to

13  review and if so, work with them to make sure they know what

14  they need to know and can get started on whatever process as

15  quickly as possible.

16      MR. ENRIGHT:   And I can say on that front, Your

17  Honor, the production to date, as I understand it, and the

18  productions to come, are produced with load files, which

19  allow for the loading of the data into a reviewing platform,

20  that in turn allow for text searching, et cetera.

21      So, for instance, Your Honor, this isn't a case --

22      THE COURT:  What would an example of the platform

23  be?

24      MR. ENRIGHT:   Relativity.

25      THE COURT:  Relativity.  Is that industry standard

1    or is that one of many?

2            MR. ENRIGHT:   That's my understanding, Your Honor.

3            THE COURT:  Okay.

4            MR. ENRIGHT:   So to your point, yes, of course, we

5    will work with defense counsel to make or to present the

6    data, to produce the data in the most kind of digestible form

7    as possible.

8            By producing this data with load files that allow

9    for the loading on a relatively reviewing platform, that is,

10   in my experience, Your Honor, the most digestible form in

11   which we can produce this data.

12           THE COURT:  Okay.  And you said it was your

13   intention to produce what you understand to be everything in

14   the SEC's possession relative to this case?

15           MR. ENRIGHT:   No, just one production, Your Honor.

16   Or sorry.  This next production will include data received

17   from the SEC.

18           THE COURT:  But is that everything they have or you

19   don't know?

20           MR. ENRIGHT:   I don't believe it is everything.

21   What I will say to Your Honor is that if anything missing --

22   anything not included in this next production -- sorry.  Let

23   me put this a different way.

24           Any remaining data from the SEC will effectively be

25   dwarfed by the amount of data, the grand jury's speed or

1       returns, the Discord server return.

2               THE COURT:  That's fine. I'm not so much interested

3       in the relative split between the SEC data you're producing

4       and the SEC data you're not, so much as the possibility that

5       something in the SEC's possession the defense comes to

6       believe at some point constitutes *Brady* or *Giglio* material,

7       and for whatever reason those documents fell into the

8       category of SEC materials not produced to the defense here.

9               And so needless to say you will do everything

10      legally required to satisfy yourselves that that risk has

11      been managed appropriately.

12              MR. ENRIGHT:  Understood and yes, we will do that,

13      Your Honor.

14              THE COURT:  Okay.  What is the government proposing

15      in terms of next steps?

16              MR. ENRIGHT:  Once the protective order vis-a-vis

17      the defendant Mr. Smith is ironed out, as I said, we'll be

18      producing this discovery that we've been discussing.

19              THE COURT:  I mean next steps in court.  Do you

20      have a date for a status conference or --

21              MR. ENRIGHT:  I don't have a date. I would suggest

22      30 or 60 days is fine for the government, Your Honor. I don't

23      know how much time defense counsel will want, just given the

24      size of the discovery that's coming down the pike.

25              THE COURT:  Okay.  All right.  Mr. Schuman?

1          MR. SCHUMAN:  Good morning, Your Honor.

2          THE COURT:  Good morning.

3          MR. SCHUMAN:  I'd like to raise two points, Your

4     Honor.

5          One, Mr. Karony, obviously has not obtained bail

6     yet from the court.

7          As you may recall when we were last before you on

8     December 6th there had been an application before Magistrate

9     Judge Cho on a proposed bail package that was denied without

10    prejudice.  There had been a prior history, including an

11    appearance before Your Honor.

12         On Friday we identified a number of co-signers and

13    collateral for a new, robust proposed package to the

14    government that I understand the government is evaluating in

15    the coming days in anticipation of an application by Mr.

16    Karony for bail, whether by agreement with the government or

17    otherwise.

18         And so I'd inquire would Your Honor like us to

19    apply at that time to a magistrate judge again?

20         THE COURT:  Yes.

21         MR. SCHUMAN:  And second, I wanted to inform the

22    court that my firm will be applying to the court, pursuant to

23    the local rules, to withdraw as counsel to Mr. Karony due to

24    a lack of funds.  Mr. Karony initially was to be indemnified

25    by his employer, Safe Moon, which ultimately filed for

1    bankruptcy.

2         There had been an initial retainer which was

3    exhausted some weeks ago.  There had been a sale of property

4    by Mr. Karony, a home, and the proceeds of that were seized

5    by the government.  So those also were unavailable to pay for

6    legal fees.

7         So at this juncture my firm will be makinf the

8    submission to the court and we've guided Mr. Karony to apply

9    for the appointment of CJA counsel.

10        THE COURT:  Okay.  So you'll be submitting a letter

11   to that effect.

12        MR. SCHUMAN:  Yes.  Given the timing we thought it

13   appropriate to attend today's conference.

14        THE COURT:  Okay.

15        MR. SCHUMAN:  Also we've put together the bail

16   package for the government just on Friday, so we wanted to

17   notify the court in this conference, but we'll be submitting

18   the letter either later today or tomorrow.

19        THE COURT:  Okay.  All right.  Ms. Wozencroft?

20        MS. WOZENCROFT:  Good morning, Your Honor.

21        THE COURT:  Good morning.

22        MS. WOZENCROFT:  If the court will entertain it, I

23   just would like to speak about the protective order briefly

24   and some of the concerns I see arising.

25        THE COURT:  Sure.

1    MS. WOZENCROFT:  Generally speaking -- and

2 obviously the court has highlighted this morning some review

3 -- it sounds like both parties need to review some of the law

4 related to personal information in the -- with regard to

5 financial crimes.

6    Putting that aside though the protective order that

7 has been provided by the government includes provisions for

8 both attorney possession only and attorney's eyes only,

9 neither of which on principle we have an objection to.  But

10 as to the substance we do.

11    I can't -- I don't foresee and the government

12 hasn't been able to provide any material in this case which

13 would be appropriate for attorney's eyes only.  And so that

14 is our objection to that provision.

15    With regard to attorney possession only the

16 government has sort of just gone through in detail the

17 extensive materials we're getting.

18    And I can also -- I would just highlight for the

19 court that the first -- I'm new to this case.  Mr. Dahlberg

20 is now on leave so this case was recently assigned to me and

21 I've been trying to go through the first set of discovery

22 that was sent.

23    And it's significant in and of itself.  The private

24 messaging materials that were produced are voluminous and

25 lengthy.  And, in fact, even without a protective order,

1    trying to get those materials to Mr. Smith to review, who

2    lives out of state, who is a six to seven hour drive from

3    here, has been challenging.

4           So my concern is even if we agreed on the language,

5    per se, of a protective order, the idea that there could be

6    some things that fall into a category of attorney possession

7    only.  My concern is that even if that were true, that those

8    materials it designated will make it very difficult to review

9    with Mr. Smith because of the distance and the volume of

10   material.

11          THE COURT:  Yes.  So the government is talking

12   about multiple terabytes of information being produced.

13   We're going to try this case in the first half of next year

14   at the latest and I expect we'll set a trial date at the next

15   status conference, even if it's a little bit of a ways off.

16          In complex white collar prosecutions, especially

17   when the defendants are not of unlimited means, one of the

18   most important aspects, I would think, of the defense effort

19   to prepare for trial is having the defendant him or herself,

20   who knows the documents presumably better than any lawyer, at

21   least to start with, spend a significant amount of time

22   reviewing the relevant communications.

23          And a protective order that says these materials

24   have to be maintained in a lawyer's office and even maybe

25   goes farther than that and says nobody can look at these

1      except the lawyer is a major, major inhibition to that

2      critical aspect of trial prep.

3              I don't expect -- I don't remember if the Karony

4      protective order contains attorney's eyes only or attorney

5      possession only provisions.  If it does --

6              MR. ENRIGHT:  It does, Your Honor.

7              THE COURT:  Okay.  And they apply to what?

8      Everything?

9              MR. ENRIGHT:  No.  Somewhat open ended insofar as

10     it applies to materials that the government believes should

11     be designated as such.

12             THE COURT:  Yeah.  That doesn't work.  So I'm happy

13     to revisit the Karony protective order and I think we

14     probably should.

15             I think the government is -- it has a default

16     practice of seeking protective orders that are materially

17     over broad.  And I'm being advised that I did not actually so

18     order the Karony protective order, although it sounds like

19     you're saying you have my signature on it.

20             MR. ENRIGHT:  My apologies, Your Honor. I thought

21     that we did. I'm perusing right now to see if I, in fact,

22     have it in front of me.

23             THE COURT:  Yeah, the copy that I see in my digital

24     bench book here has signatures by both lawyers, but not one

25     by me.

1          MR. ENRIGHT:   My apologies, Your Honor.

2          THE COURT:  So we don't need to revisit it.  We

3  just need to visit it for the first time.

4          MR. ENRIGHT:   Understood.

5          THE COURT:  I don't see us -- you know, if you're

6  going to tell me that there are documents here that are so

7  sensitive that not only can the defendant not have them in

8  his or her residence, but cannot even look at them in a

9  lawyer's office, you've going to have to provide an extremely

10  compelling basis for that and you're going to have to define

11  the universe of those documents with real specificity.

12          You have -- I mean, I understand that Rule 16

13  contemplates the possibility of protective orders, but you

14  still have the legal obligation to produce this stuff.

15          And so the question becomes what is good cause for

16  purposes of Rule 16.  I think there are victims all over the

17  internet loudly proclaiming their victimization and so the

18  mere fact that the government believes somebody has been

19  victimized here may or may not be an adequate basis for a

20  protective order as to that person's identity.

21          Obviously, a Social Security number, a birth date,

22  all that is very different.  So work with not only Ms.

23  Wozencroft, but also Mr. Schuman, and if he withdraws,

24  whoever replaces him, to get to the bottom of this.

25          All right.  Ms. Wozencroft, was there anything else

1    other than the protective order?

2          MS. WOZENCROFT:  Just that because of the volume of

3    the materials, I think I would tend to ask for at least 60

4    days to review everything, Your Honor.

5          THE COURT:  Yeah, I want to set the next status

6    conference for a date that is far enough out that we will

7    have made meaningful use of the time between now and then and

8    can make useful progress at the next status conference.

9          If both defense counsel are amenable and believe

10   this is appropriate under the Speedy Trial Act, I might even

11   contemplate -- I think we're looking at either the first half

12   of March or the first half of April.

13         Mr. Schuman, what's your --

14         MR. SCHUMAN:  No objection, Your Honor.

15         THE COURT:  Okay.  And do you believe it would be

16   appropriate to exclude time under the Speedy Trial Act?

17         MR. SCHUMAN:  Yes, no objection to the exclusion.

18         MS. WOZENCROFT:  No objection either, Your Honor.

19         THE COURT:  Okay.  Let's look at the first half of

20   April in that case.  But even with that relatively elongated

21   time line the government obviously should act with all

22   alacrity to make whatever productions are going to go out.

23         MR. ENRIGHT:   We will, Your Honor.

24         THE COURT:  Just so everybody knows what's coming

25   at the next status conference, I expect I will set a date --

1     a schedule for motion practice and a date for a trial and I

2     think that will require, obviously, if there is a new lawyer

3     for Mr. Karony, for that person to be meaningfully up to

4     speed on what discovery looks like and what motions they may

5     be contemplating.

6           All right. So how about 9:30 a.m. on April 16th?

7           MR. ENRIGHT: That works for the government, Your

8     Honor.

9           THE COURT: And for Mr. Schuman, in theory?

10           MR. SCHUMAN: Yes, if I were required to attend --

11     and obviously, I'll help facilitate any transition to new

12     counsel as appropriate.

13           THE COURT: Terrific. Ms. Wozencroft?

14           MS. WOZENCROFT: No objection, Your Honor.

15     Obviously, we would ask that the court approve Mr. Smith to

16     travel the night before so that he could be here at 9:30 in

17     the morning.

18           THE COURT: Yes. Approved.

19           MS. WOZENCROFT: We'll submit an order in writing

20     prior to the next conference.

21           THE COURT: Okay. All right. Does the government

22     have an application with respect to the Speedy Trial Act?

23           MR. ENRIGHT: Yes, Your Honor. The government

24     would move to exclude time between today and April 16th so

25     that it may continue to produce discovery to the defendants

1    as discussed today and to allow the parties to engage in any

2    plea discussions.

3            THE COURT:  On consent of both, or without

4    opposition from either defendant, that application is

5    granted.  We're talking about a case that we haven't formally

6    designated yet as complex but that bears many indicia of the

7    complex case.

8            I don't know, is there any conversation ongoing

9    with respect to plea disposition?

10           MR. ENRIGHT:  I would say exceptionally

11   preliminarily, Your Honor.

12           THE COURT:  Okay.  But not zero.

13           MR. ENRIGHT:  Not zero.  So that's a basis as well

14   and we're also talking about the substitution of -- the

15   potential substitution of counsel.  As to one defendant that

16   is a complicating factor that will require, as Mr. Schuman

17   foreshadowed, some effort on behalf of outgoing and incoming

18   counsel at some point, if that's the way we go.

19           And so I order the time excluded from today through

20   April 16th, inclusive.  I find that the interests of justice

21   served by that exclusion outweigh any interest of either the

22   parties or the general public at this point in the case.

23           Anything else from the government's side?

24           MR. ENRIGHT:  No, Your Honor.

25           THE COURT:  Mr. Schuman, anything else?

1          MR. ENRIGHT:   No, Your Honor.

2          THE COURT:  Ms. Wozencroft?

3          MS. WOZENCROFT:  No, Your Honor.

4          THE COURT:  All right.  Thank you, all, and we'll

5    see you in April and hear from you in the meantime?

6          MR. ENRIGHT:   Thank  you, Your Honor.

7          MR. SCHUMAN:  Thank you.

8          MS. WOZENCROFT:  Thank you.

9        (Proceedings concluded at 11:43 a.m.)

10   I, CHRISTINE FIORE, court-approved transcriber and certified

11   electronic reporter and transcriber, certify that the

12   foregoing is a correct transcript from the official

13   electronic sound recording of the proceedings in the above-

14   entitled matter.

15

16   *Christine Fiore*

17   _____          January 29, 2024

18       Christine Fiore, CERT

19

20

21

22

23

24

25